**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

NOEL MARTINEZ, ET AL.

    **Plaintiffs**

       v.

UNITED STATES OF AMERICA

    **Defendants**

**CIVIL NO.** 16-2430(RAM)

**OPINION AND ORDER**

RAÚL ARIAS-MARXUACH, District Judge

Pending before the court is Defendant's motion to exclude the testimony of Plaintiffs' expert witness, Dr. José R. Ortiz-Feliciano. (Docket No. 33.) Plaintiffs have filed an opposition. (Docket No. 38.) After carefully reviewing the parties' arguments, the case record and the applicable law, the Court hereby **GRANTS** Defendants' motion to exclude the proffered expert testimony of Dr. José R. Ortiz-Feliciano.

I. BACKGROUND

On August 3, 2016, Plaintiffs filed an action for emotional and physical damages against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.* (Docket No. 1 at 4.) Specifically, Plaintiffs claim that Mr. Noel Martínez-Marrero's wrongful death was caused by the negligence and medical malpractice of the Veterans Affairs Hospital ("VA Hospital") that treated him. (Docket No. 1 at 2.) On December 12, 2016, the Defendant filed an answer to the complaint denying all acts of negligence. (Docket No. 11 at 5.)

Plaintiffs retained Dr. José R. Ortiz-Feliciano as their expert witness to testify about Mr. Martínez-Marrero's cause of death, the applicable medical standards and the deviations of care by VA Hospital. (Docket No. 27 at 33.)

On February 11, 2019, Defendant moved to exclude Dr. Ortiz-Feliciano's expert witness testimony for failing to meet the requirements of Fed. R. Evid. 702. Defendant alleges that because Mr. Martínez-Marrero was evaluated and admitted by the VA Hospital's Internal Medicine Service, Dr. Ortiz-Feliciano is not qualified to testify as an expert in the present case given that his training is in general medicine and surgery and not internal medicine. (Docket No. 33 at 8-9.) Moreover, Defendant argues that Dr. Ortiz-Feliciano's testimony will not assist the trier of fact because the report of his testimony does not include or discuss (1) the appropriate standard of care; (2) the medical data used to support his conclusions; (3) that there was a deviation from acceptable medical standards; (4) nor the damages caused by the defendant's deviations. (Docket No. 33 at 5.)

On March 3, 2019, Plaintiffs presented their opposition to Defendant's motion to exclude expert testimony. (Docket No. 38.) Plaintiffs affirm that Dr. Ortiz-Feliciano does not need to be a specialist to be qualified as an expert witness (Docket No. 38 at 8-9.) Additionally, Plaintiffs argue that Defendant's critiques can affect the probative weight of Dr. Ortiz-Feliciano's expert testimony but not its admissibility. (Docket No. 38 at 9.)

II. APPLICABLE LAW

*A. The Admissibility of Expert Witness Testimony*

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. Fed. R. Evid. 702 establishes that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to Rule 702, trial judges are tasked with "ensuring that an expert's testimony both rests on reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharms., Inc.*,* 509 U.S. 579, 597 (1993). When applying this rule, judges must assume the "role of gatekeepers to screen expert testimony that although relevant, was based on unreliable scientific methodologies." González-Pérez v. Gómez-Águila, 296 F.Supp.2d 110, 113 (D.P.R. 2003) (citing Daubert, 509 U.S. at 597 (1993) ("Pertinent evidence based on scientifically valid principles will satisfy those demands.")

When assessing the reliability of expert testimony, trial courts can consider the following factors discussed in Daubert: (1) whether the expert's theory or technique is generally accepted as reliable in the scientific community; (2) whether the theory or technique in question can be, and has been, tested; (3) whether the theory or technique has been subjected to peer review and publication; and (4) the known or

potential rate of error of the theory or technique. Daubert, 509 U.S. at 588-594.

In the performance of their gatekeeping function, judges must focus "**solely on principles and methodology, not on the conclusions that they generate**." Daubert, 509 U.S. at 595. Although certainly conclusions and methodology are not entirely distinct from one another, "a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). *See also* Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under Daubert, that's not enough.")

Thus, to ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." Figueroa v. Simplicity Plan de Puerto Rico, 267 F. Supp. 2d 161, 164 (D.P.R. 2003). "**Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial**." Id. (citing Justo Arenas & Carol M. Romey, Professional Judgement Standard and Losing Games for Psychology, Experts and the Courts, 68 Rev. Jur. U.P.R. 159, 180 (1999)).

In order to be admissible, expert reports must also comply with Federal Rule of Civil Procedure 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(B) requires that expert reports contain the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

These requirements make it clear that Rule 26(a)(2)(B) "call[s] for parties to make explicit and detailed expert disclosures." Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D., 456 F.3d 272, 276 (1st Cir. 2006) Thus, "expert-related disclosures are insufficient when they consist of "sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony." Rivera-Marrero v. Presbyterian Cmty. Hosp., 255 F. Supp. 3d 290, 296–97 (D.P.R. 2017) (quoting Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546 (5th Cir. 1996)). *See also* Romero v. Drummond Co., Inc., 552 F.3d 1303 (11th Cir. 2008) (The District Court did not abuse its discretion when excluding experts whose reports consisted of single paragraphs that merely recited the general subject matter of their expected testimony and lacked any of the substance required by Rule 26(a)(2)(B).)

In accordance with these requirements, Fed. R. Civ. P. Rule 26(e)(2) dictates that parties have a duty to supplement an expert's report by the time pretrial disclosure are due.  The duty to supplement

applies to "[c]hanges in the opinions expressed by the expert whether in the report or at a subsequent deposition." Fed. R. Civ. P. 26(a) advisory committee's notes.

   *B. Which Physicians are Qualified to Testify as Experts*

   When analyzing the admissibility of an expert witness, the trial court must first resolve "whether the putative expert is qualified by knowledge, skill, experience, training, or education," to offer testimony. Mitchell v. United States, 141 F.3d 8, 14 (1st Cir.1998) (citation omitted). In the context of physicians, credentials such as a board certification in a medical specialty have never been a prerequisite to qualification as an expert witness. *See* Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 114 (1st Cir. 2010) (quoting Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir.1975) (*per curiam*)). Although said credentials are relevant when considering the weight and probative value of expert witness testimony, they are not necessary for its admissibility. Id.

   The First Circuit has reiterated that an expert physician does not need to be "a specialist in a particular medical discipline to render expert testimony relating to that discipline." Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15, 24 (1st Cir. 2003). *See also* Mitchell v. United States, 141 F.3d 8, 15 (1st Cir.1998); Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir.1985) ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it.") Furthermore, excluding testimony "that would otherwise 'assist the trier better to understand a fact in issue'

simply because the expert does not have the specialization that the court considers most appropriate" is considered to be an abuse of the court's discretion. <u>Pages-Ramirez</u>, 605 F.3d at 114. *See also* <u>Gaydar</u>, 345 F.3d at 24–25 ("[I]t would have been an abuse of discretion for the court to exclude Dr. Rodriguez's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics.")

*C. The standard of care in medical malpractice cases*

In order to prevail in a medical malpractice claim, a plaintiff must establish three elements: (1) the basic norms of knowledge and medical care applicable to general practitioners or specialists ("the standard of care"); (2) proof that the medical personnel failed to follow these basic norms in the treatment of a patient; and (3) a causal relation between the act or the omission of the physician and the injury by the patient. *See* <u>Santiago v. Hosp. Cayetano Coll y Toste</u>, 260 F. Supp. 2d 373, 381 (D.P.R. 2003).

Puerto Rico law holds physicians in malpractice cases to a national standard of care. *See* <u>Cortes-Irizarry v. Corporacion Insular De Seguros</u>, 111 F.3d 184, 190 (1st Cir. 1997). Therefore, a physician's duty is to provide patients with medical care "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession." <u>Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular de Puerto Rico y Del Caribe</u>, 32 F. Supp. 3d 83, 87 (D.P.R. 2014) (quoting <u>Santiago-Otero v. Mendez</u>, 135 D.P.R. 540, 1994 P.R.-Eng. 909,224 (1994)).

### III. ANALYSIS

Prior to considering the content of Dr. Ortiz-Feliciano's testimony, we must first determine if he is qualified to testify as an expert. Courts have clearly established that physicians do not need to be specialists in order to be qualified experts. *See* Gaydar*,* 345 F.3d at 24. Therefore, contrary to Defendant's allegations, Dr. Ortiz-Feliciano is *qualified* to testify in the present medical malpractice case despite being a surgeon and not an internal medicine specialist.

Generally, for Dr. Ortiz-Feliciano's testimony to be *admissible* it must be both reliable and relevant. Reliability in this context requires that it be based on sufficient data and/or facts and is the product of trustworthy principles. For the testimony to be considered relevant, it must help the trier of fact to understand the evidence or determine a fact in issue. Furthermore, the expert witness report must contain the information required by Fed. R. Civ. P. 26(a)(2)(B).

The Defendant submitted Dr. Ortiz-Feliciano's expert witness report as Exhibit 2 in their motion *in limine*. (Docket No. 33-2.) The excerpt of Dr. Ortiz-Feliciano's deposition that was also included as an exhibit does not discuss if the report is final. (Docket No. 33-3.) However, Plaintiffs have not alleged that this is not the final report nor that they have supplemented that report. (Docket No. 38.) It is worth noting that the parties submitted their joint proposed pretrial report on July 30, 2018. (Docket No 27.) Thus, the Plaintiffs are currently barred from supplementing the report. Fed. R. Civ. P. 26(e)(2).

Dr. Ortiz-Feliciano's report is only two pages long. (Docket No. 33-2.) Most of the report consists of a cursory summary of Mr. Martínez-

Marrero's clinical history, hospital record and autopsy report. (Docket No. 33-2 at 1-2.) The report includes a table showing Mr. Martínez-Marrero's decreasing platelet count on various dates between October 18, 2014 and October 26, 2014. (Docket No. 33-2 at 2.) Dr. Ortiz-Feliciano then states that "[w]e can only postulate that this decrease continued during the period of 10/27 to 10/29."[1] (Docket No. 33-2 at 2.) He proceeds to conclude that: "The decline in platelet levels was not monitored or corrected during the last 3 days prior to death. This is a departure from accepted medical practice." (Docket No. 33-2 at 2.)

Pursuant to the previously cited case law interpreting the application of Fed. R. Evid. 702, this Court must focus on the reliability of the principals and methodology utilized by the expert. Daubert, 509 U.S. at 595. However, in this instance, **the report offers no principles, methods, medical literature or other sources to analyze**. The report simply summarizes Mr. Martínez-Marrero's medical records and then proceeds to offer various conclusory statements.  Beyond failing to show that the testimony is supported by an accepted methodology based on substantial scientific or specialized information, the report also admittedly lacks key facts that are fundamental for its conclusion. *See* Figueroa, 267 F. Supp. at 164. Specifically, Dr. Ortiz-Feliciano explicitly states that he can "**only postulate**" that Mr. Martínez-Marrero's platelet count continued to decrease during the three days prior to his death. As discussed in Gen. Elec. Co. v. Joiner, we must conclude that there is "simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co., 522 U.S. at 146.

---

[1] Mr. Martínez-Marrero passed away on October 29, 2014.

Considering the above, Plaintiffs' expert witness testimony is patently unreliable due to its lack of data, facts and methodology.

In addition to being unreliable, Dr. Ortiz-Feliciano's testimony **does not provide any helpful information that could not be obtained from revising Mr. Martínez-Marrero's hospital record and autopsy report**. The report does not explain, or even define, the medical conditions and medications described in said records in a way that would facilitate understanding them. With regards to the elements of a malpractice case, the expert witness report glaringly omits mentioning the applicable standard of care that Defendant's should have met prior to concluding that a departure occurred. Thus, given that the report lacks an explanation of Mr. Martínez-Marrero's medical condition or any opinion adequately supported by facts and specialized knowledge, it would not assist the trier of fact in this case.

Lastly, Plaintiffs' expert witness report is not admissible because it does not completely contain any of the information required by Fed. R. Civ. P. 26(a)(2)(B). It is also clear that the report was not supplemented accordingly following Dr. Ortiz-Feliciano's deposition. Fed. R. Civ. P. 26(e)(2).

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that Dr. Ortiz-Feliciano's report and proffered testimony do not fulfill the requirements of Fed. R. Evid. 702, Fed. R. Civ. P. 26(a)(20(B) and the applicable case law. Wherefore, Defendant's motion to exclude the testimony of Plaintiffs' expert witness at Docket No. 33 is hereby **GRANTED**.

**IT IS SO ORDERED**.

In San Juan Puerto Rico, this 10th day of July 2019.

S/ RAÚL ARIAS-MARXUACH
United States District Judge
