```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

NOEL MARTINEZ, ET AL

    **Plaintiffs**

        v.                        **CIVIL NO.** 16-2430(RAM)

UNITED STATES OF AMERICA

    **Defendant**

### OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the court is Defendant's *Motion for Summary Judgment* (Docket No. 62) accompanied by a *Statement of Undisputed Material Facts* (Docket No. 63) and supporting *Memorandum of Law* (Docket No. 64). Plaintiffs filed a *Statement in Opposition to Defendants Statement of Undisputed Material Facts* (Docket No. 71) and a *Memorandum in Opposition*. (Docket No. 72). After reviewing the parties' filings and the applicable law, the Court hereby **GRANTS** Defendant's *Motion for Summary Judgment* at Docket No. 62.

### I. BACKGROUND

On August 3, 2016, Plaintiffs filed an action for emotional and physical damages against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.* (Docket No. 1 at 4). Specifically, Plaintiffs allege that Mr. Noel Martínez-Marrero's ("Martínez-Marrero"), their father, died

due to negligent treatment provided by the Veterans Affairs Hospital ("VA Hospital"). Id. at 2). On December 12, 2016, the Defendant filed an *Answer to the Complaint* denying all acts of negligence. (Docket No. 11 at 5).

Plaintiffs retained Dr. José R. Ortiz-Feliciano ("Dr. Ortiz-Feliciano") as their expert witness to testify about Mr. Martínez-Marrero's cause of death, the applicable medical standards and the deviations of care by the VA Hospital. (Docket No. 27 at 33). On February 11, 2019, Defendant filed a *Motion in Limine* to exclude Dr. Ortiz-Feliciano's expert testimony for failing to meet the requirements of Fed. R. Evid. 702. (Docket No. 33). Plaintiffs filed an *Opposition* in response. (Docket No. 38). The Court ultimately granted Defendant's *Motion in Limine*, thereby striking Dr. Ortiz-Feliciano's proffered testimony. (Docket No. 46). Furthermore, the Court denied Plaintiffs' subsequent *Motion for Reconsideration*. (Docket No. 48).

## II. LEGAL REVIEW

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that: (1) there is no genuine dispute as to any material fact and (2) they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168,

175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at 6* (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "that a trialworthy issue persists." Paul v. Murphy, 2020 WL 401129, at *3 (1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of the non-movant, it will disregard conclusory allegations, unsupported speculation and improbable inferences. *See* Johnson v. Duxbury, Massachusetts, 931 F.3d 102, 105 (1st Cir. 2019). Moreover, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007) (quotation omitted). Hence, a court should review the record in its entirety and refrain from making credibility determinations or

weighing the evidence. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Furthermore, unless the fact is admitted, the opposing party must support each denial or qualification with a record citation. Id.

Responses which "do not oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it" are insufficient to properly controvert a material fact. *See* Aztar Corp. v. N.Y. Entertainment, LLC, 15 F.Supp.2d 252, 254 n. 1 (E.D.N.Y. 1998), aff'd. 210 F.3d 354 (2d Cir. 2000)(noting that responses only averring a "lack of knowledge or information sufficient to either admit or deny [a fact]" did not create an issue of fact).

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* Natal Pérez v. Oriental Bank &

Trust, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) and Malave-Torres v. Cusido, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with Local Rule 56(c)'s strictures, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at their peril. *See* Natal Pérez, 291 F. Supp. 3d at 219 (citations omitted).

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Defendant's *Statement of Undisputed Material Facts* (Docket No. 63), Plaintiffs' *Statement in Opposition to Defendants Statement of Undisputed Material Facts* (Docket No. 71), as well as the totality of the record, including the *Complaint* (Docket No. 1). After **only crediting material facts that are properly supported by a record citation to admissible evidence and are uncontroverted**, the Court makes the following findings of fact:

1. In 2014, Mr. Noel Martínez-Marrero ("Martínez-Marrero" or the "Patient") was a sixty-six (66) year-old veteran with a history of chronic liver disease and high blood pressure. (Docket Nos. 63 ¶ 12; 1 ¶ 9).

2. On October 17, 2014, Mr. Martínez-Marrero went to the VA Hospital because of abdominal pain, general malaise, headache and vomiting. (Docket No. 1 ¶¶ 9-10).

3. On October 18, 2014, Mr. Martínez-Marrero was admitted to the VA Hospital due to his advanced chronic liver disease, obstructive jaundice, and suspected upper GI bleeding and left femoral fracture. (Docket No. 71-1 at 7-9).

4. According to his medical records, Mr. Martinez-Marrero's medical history included the following conditions: Hypertension; Thrombocytopenia (active/chronic); Chronic Hepatitis C; Chronic Hepatitis B; Diabetes Mellitus; Hypertrophy (benign) of Prostate with urinary retention; Subdural Hematoma following injury; Depressive Disorder; Anemia (active/chronic); Schizophrenia (Undifferentiated Type); Carcinoid Syndrome; Cocaine abuse (in remission); Heroin Dependence (in remission); Cholelithiasis; Diverticulosis Colonic; Impotence (organic origin); Low back pain; a closed supracondylar fracture of femur; Impaired wheelchair motility. (Docket No. 71-4 at 1-7).

5. Mr. Martinez-Marrero suffered from the listed chronic conditions long before October 2014 when he visited the VA Emergency Room. (Docket No. 63 ¶ 22).

6. During his hospitalization, on October 19, 2014, Mr. Martínez-Marrero fell. (Docket No. 71 ¶ 13).

7. While at the VA Hospital, Mr. Martínez-Marrero's platelets were lowering and reached the following levels:

    October 18, 2014: 75 L
    October 20, 2014: 82 L
    October 21, 2014: 70 L
    October 22, 2014: 68 L
    October 23, 2014: 65 L
    October 25, 2014: 63 L
    October 26, 2014: 54 L

   (Docket Nos. 71 ¶ 6; 71-4 at 946-948).

8. Mr. Martínez-Marrero's platelets were not corrected. (Docket No. 71-3 at 60-61).

9. While hospitalized, Mr. Martínez-Marrero was on Vancomycin for six (6) days, starting October 22, 2014 until October 28, 2014. (Docket No. 71 ¶ 19).

10. Mr. Martinez-Marrero remained at the VA Hospital until October 29, 2014, when he was found unresponsive by the nursing staff and subsequently pronounced dead. (Docket No. 63 ¶ 16; 71-4 at 8).

11. The "Summary of Death Note" dated October 29, 2014 in the medical records states that Mr. Martínez-Marrero's had previously decided that he wanted "no resuscitation or intubation, he was aware of his critical condition." (Docket No. 71-1 at 6).

12. On August 3, 2016, Mr. Martínez-Marrero's daughters and son (collectively "Plaintiffs") filed an action for emotional and physical damages against the United States

of America pursuant to the Federal Torts Claims Act, Title 28 U.S.C. Sections 1346 (b), 2671, et. seq. (Docket No. 63 ¶¶ 1, 11).

13. Plaintiffs claimed that Mr. Martínez-Marrero's death was wrongful and caused by the negligence and medical malpractice of the VA Hospital that treated him. Id. ¶ 2.

14. On December 12, 2016, the United States of America denied all acts of negligence in their *Answer* to Plaintiffs' Complaint denying all acts of negligence. Id. ¶ 3.

15. In her deposition, Defendant's expert witness Dr. Anibelle Altieri-Ramirez ("Dr. Altieri"), testified that individuals with thrombocytopenia, such as the Patient, have an increased risk of bleeding depending on the values of their platelets. (Docket Nos. 71 ¶¶ 14-15; 71-3 at 73).

16. Pathologist Jose Torres-Rivera testified at his deposition that he found five sites of contusions in Mr. Martínez-Marrero's body, which imply bleeding, but did not measure the amount of bleeding. (Docket Nos. 71 ¶ 23; 71-6 at 79-80).

17. Plaintiffs retained Dr. José R. Ortiz-Feliciano ("Dr. Ortiz-Feliciano") as their expert witness to testify about Mr. Martínez-Marrero's cause of death, the

> applicable medical standards and the deviations of care by VA Hospital. (Docket No. 63 ¶ 4).

18. Dr. Ortiz-Feliciano's expert witness report and proffered testimony were excluded by the Court. Id. ¶ 9.

### IV. APPLICABLE LAW

The Federal Torts Claims Act ("FTCA") provides that district courts:

> [H]ave exclusive jurisdiction of civil actions on **claims against the United States, for money damages**, […] for injury or loss of property, or **personal injury or death** caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, **under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred**.

28 U.S.C.A. § 1346(b)(1) (emphasis added). Accordingly, "[c]ourts have interpreted that 'the law of the place where the act or omission occurred' means that the federal court must apply the 'whole law' that a state court would apply in an analogous tort action." Zabala-Calderon v. United States, 616 F. Supp. 2d 195, 199 (D.P.R. 2008). In the case at bar, the alleged medical malpractice occurred in Puerto Rico. Therefore, the Court must determine whether negligence, and thus liability, occurred pursuant to Puerto Rico law.

In medical malpractice cases under Puerto Rico law, the plaintiff must prove three key elements: "(1) the duty owed (i.e.,

the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Laureano Quinones v. Nadal Carrion, 2018 WL 4057264, at *2–3 (D.P.R. 2018) (quoting Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005)).

In these cases, the duty-owed by physicians is that they must comply with the national standard of care. *See* Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 190 (1st Cir. 1997); *See also* Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 43 (1st Cir. 2005). In other words, a physician's duty is to provide patients with medical care "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession." Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular de Puerto Rico y Del Caribe, 32 F. Supp. 3d 83, 87 (D.P.R. 2014) (quoting Santiago-Otero v. Mendez, 135 D.P.R. 540, 1994 P.R.-Eng. 909, 224 (1994)). Notably, **there is a presumption that "physicians have 'provided an appropriate level of care.'"** Laboy-Irizarry v. Hosp. Comunitario Buen Samaritano, Inc., 2019 WL 3311270, at *9 (D.P.R. 2019) (quoting Borges ex rel. S.M.B.W. v. Serrano-Insern, 605 F.3d 1, 7 (1st Cir. 2010)) (emphasis added). Thus, plaintiffs must refute this presumption by "adducing evidence sufficient to show both the minimum standard of

care required **and** the physician's failure to achieve it." Id. (emphasis added).

On the other hand, causation under Puerto Rico law is ruled by the "adequate causation" doctrine. An adequate cause "is not every condition without which a result would not have been produced, but that which ordinarily produces it according to general experience." Laboy-Irizarry, 2019 WL 3311270, at *9 (quoting Cardenas Maxan v. Rodriguez Rodriguez, 125 P.R. Dec. 702, 710 (1990), P.R. Offic. Trans.). In other words, "[a] condition is an adequate cause if it **ordinarily can be expected to produce the result at issue**." Ganapolsky v. Boston Mut. Life Inc. Co., 138 F.3d 446, 443 (1st Cir. 1998) (emphasis added).

The Puerto Rico Supreme Court and the First Circuit have repeatedly held that expert testimony is required in medical malpractice suits to both prove causation and to refute the presumption that adequate care was provided. For example, in Marcano Rivera v. Turabo Medical Center Partnership, the First Circuit explained that **"a factfinder normally cannot find causation [a breach of the duty owed] without the assistance of expert testimony to clarify complex medical and scientific issues that are more prevalent in medical malpractice cases than in standard negligence cases."** Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005)) (quoting Rojas-Ithier, 394 F.3d at 43; *see also* Cruz-Vazquez v. Mennonite General Hosp.,

Case 3:16-cv-02430-RAM   Document 73   Filed 08/26/20   Page 12 of 16

Civil No. 16-2430 (RAM)                                           12

Inc., 613 F.3d 54, 56 (1st Cir. 2010); Pages- Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113 (1st Cir. 2010). In the same vein, and as advanced above, this District has held that expert testimony is necessary to prove both the applicable standard of care **and** a doctor's failure to meet it. *See* Vargas-Alicea v. Cont'l Cas. Co., 2019 WL 1453070, at *1 (D.P.R. 2019) (citing Rolón-Alvarado v. San Juan, 1 F.3d 74, 78 (1st Cir. 1993)) ("Given that medical knowledge is critical to demonstrating the parameters of a health-care provider's duty, the minimum standard of acceptable care is almost always a matter of informed opinion."). Accordingly, although striking a plaintiff's expert is "technically not a dismissal of [Plaintiff's] case, [it can] effectively amoun[t] to one" because "Plaintiff is unable to present any expert opinion sufficient to establish either the Defendants' duty of care or a breach of the duty owed." Gonzalez Rivera v. Hosp. HIMA-Caguas, 2018 WL 4676925, at *5 (D.P.R. 2018), aff'd sub nom. Gonzalez-Rivera v. Centro Medico Del Turabo, Inc., 931 F.3d 23 (1st Cir. 2019) (internal citations omitted) (quoting Esposito v. Home Depot, U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009)).

Despite the above, there *are* few exceptions where expert testimony is not necessary to prove causation in medical malpractice suits. This occurs in "situations where common knowledge and experience are all that is necessary to comprehend a defendant's negligence […], or where negligence is grossly

apparent, […] or where a doctor's conduct violates a set standard." Rolón-Alvarado v. San Juan, 1 F.3d 74, 79 (1st Cir. 1993). This means that the exceptions must encompass "only those few situations in which the claimed medical malpractice **is sufficiently blatant or patent that lay persons, relying on common knowledge and experience, can legitimately recognize or infer negligence**." Id.

Lastly, under Puerto Rico law, a hospital can be held vicariously "liable to its patients for malpractice when there has been negligence on the part of the hospital's employees." Morales v. Monagas, 723 F. Supp. 2d 416, 419 (D.P.R. 2010) (citation omitted). Article 1803 of the Puerto Rico Civil Code governs the vicarious liability doctrine and establishes that "[o]wners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties." P.R. Laws Ann. tit. 31, § 5142. In other words, if hospital staff is found to have committed medical malpractice, the hospital would be vicariously liable to the injured party.

## V. ANALYSIS

This Court struck Plaintiffs' proffered expert testimony because the report was conclusory, lacked key data, and fundamentally **failed to articulate a national standard of care**. (Docket No. 46). This Court **also** denied Plaintiffs' *Motion for Reconsideration* on this same issue. (Docket Nos. 48 and 51).

Furthermore, Plaintiffs have not provided any additional evidence or material facts to show medical malpractice.

Accordingly, this Court concludes that summary judgment is proper because without expert testimony, Plaintiffs cannot establish *any* of the necessary elements of a medical malpractice claim under Puerto Rico law, namely: (1) the VA Hospital's duty of care; (2) that a breach to said duty occurred; and (3) that the breach caused Mr. Martínez-Marrero's unfortunate demise. See Laureano Quinones, 2018 WL 4057264, at *2-3. Plaintiffs allege that Mr. Martínez-Marrero's death was caused by severe bleeding that occurred because his platelet levels were not monitored and corrected. (Docket No. 72 at 12-13). It is uncontested that Mr. Martínez-Marrero's platelets were dropping and were not corrected (Facts ¶¶ 7-8). However, expert testimony is necessarily required to assist the finder of fact with understanding the appropriate platelet amount for someone with Mr. Martínez-Marrero's conditions, what steps should have been taken and when to address the low platelet count, as well as whether the decrease in platelets was the adequate cause of the Patient's death as Plaintiffs suggest. See Marcano Rivera, 415 F.3d at 167.

Notably, the case at bar does not fall within the narrow exception to this rule. Any potential negligence in this case is not "grossly apparent" or otherwise discoverable through mere common knowledge and experience. Rolón-Alvarado, 1 F.3d at 79.

Moreover, the Court considers that lay persons would be unable to infer causation without the assistance of expert testimony, especially considering Mr. Martínez-Marrero's advanced chronic liver disease, among other conditions. (Facts ¶¶ 4-5).

In Rodriguez-Diaz v. Seguros Triple-S, Inc., the First Circuit upheld a district court's summary judgment ruling in a medical malpractice case after the lower court had excluded the expert report and plaintiffs had not presented any other evidence to "establish that the care afforded did not meet minimal standards" Rodriguez-Diaz v. Seguros Triple-S, Inc., 636 F.3d 20, 23-24 (1st Cir. 2011). Specifically, the Rodriguez-Diaz Court held that:

> Absent an expert witness, […] it would be hard for the jury to know anything about relative urgency or any need for differentiation on some other basis— let alone how the patient's specific symptoms or the slide results in this case might bear upon the question. […] [T]he appeal fails **because there is a legal rule requiring expert testimony in a case of this character, and possible exceptions [such as the jury using common sense to close the gap] to the rule have not been shown to apply.**

Id. at 24. Similarly, another Judge in this District ultimately **granted** summary judgment after determining that preclusion of expert testimony made it *impossible* to evince the necessary elements of causation in a medical malpractice case. See Gonzalez Rivera, 2018 WL 4676925, at *5. In the present case, Plaintiffs themselves have **acknowledged** that "the exclusion of [their]

expert, technically constitutes the dismissal of the case." (Docket No. 48 at 1).

In light of the above, and in the absence of medical expert testimony, Plaintiffs cannot refute the presumption that the VA Hospital "provided an appropriate level of care." *See* Borges ex rel. S.M.B.W., 605 F.3d at 7. Consequently, this Court finds that it cannot infer for purposes of summary judgment that the VA Hospital's purported negligence monitoring platelets was the adequate cause of Mr. Martínez-Marrero's death. As the First Circuit has cautioned, "an inference is reasonable only if it can be derived from the evidence without resort to speculation." Hidalgo v. Overseas Ins. Agency, 120 F.3d 328, 332 (1st Cir. 1997).

## VI. CONCLUSION

Due to the absence of expert testimony and Plaintiffs' inability to show that the VA Hospital staff's conduct was sufficiently blatant or patent that a lay person could infer that negligence caused Mr. Martínez-Marrero's death, the Court **GRANTS** Defendant's *Motion for Summary Judgment* at Docket No. 62. Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

In San Juan Puerto Rico, this 26th day of August 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge